ATK THIOKOL, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–440C.

United States Court of Federal Claims.

July 31, 2006.

Thomas A. Lemmer, McKenna, Long and Aldridge LLP, Denver, Colorado, for Plaintiff.

Kyle E. Chadwick, United States Department of Justice, Washington D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### I. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

For the past thirty years, Plaintiff has manufactured and sold launch vehicle motors to support the National Aeronautics and Space Administration ("NASA")'s Space Shuttle program and several significant ballistic missile programs, including: the Polaris; the Poseidon; the Trident; the Minuteman; the Small Intercontinental Ballistic Missile and Peacekeeper; the Aerospace; and the MBB/EKNO/EADS. *See ATK Thiokol, Inc. v. United States,* 68 Fed.Cl. 612, 615 (2005). Because of uncertainty surrounding the defendant ("the Government")'s sustained commitment to the space program, Plaintiff decided to diversify and began to sell launch vehicle motors to foreign governments and commercial companies such as: Lockheed Martin Corporation; McDonnell Douglas Corporation; EER; Orbital Sciences Corporation; and Nissan a/k/a IHI. *Id.*

The launch vehicle motor industry was and is technology driven and, to remain competitive, Plaintiff continuously was engaged in research and development ("R & D") that primarily was funded internally. *Id.* In making a decision to fund R & D, Plaintiff was mindful that customers do not want to pay all R & D costs for a product that later may be purchased by others. *Id.* Moreover, a "cost" of accepting customer R & D funding is that Plaintiff might lose the ability to control the use of company intellectual property and proprietary information. *Id.* For these reasons, Plaintiff was attentive to whether the Government would recognize R & D expenditures as "indirect costs" that could be reimbursed under the FAR and allow intellectual property rights to remain in Plaintiff's control. *Id.* Whether R & D costs also could be recovered through profit was an important and relevant factor. *Id.*

R & D costs generally were incurred at the same time as contract performance. *Id.* Therefore, when a new contract was awarded, Plaintiff set up two separate categories to account for R & D costs: "development work related to the contract;" and "development work not directly related to a contract." *Id.* In addition to R & D required to develop new or modified launch vehicle motors, Plaintiff also typically incurred "Production Equipment" costs, such as new tooling, equipment, and facilities costs. *Id.*

Between 1990 and 1999, Plaintiff incurred $8,149,888.00 in costs to develop the Castor® IVA–XL motor for the commercial market: $3,149,888.00 for R & D and $5,000,000.00 for Production Equipment. *Id.* at 617–20. Plaintiff allocated these costs to indirect cost pools. *Id.* at 621.

* * *

On March 10, 1999, the Divisional Administrative Contracting Officer ("DACO")[2] issued: Contracting Officer's Notice of Intent to Disallow Costs, Castor IVA–XL B & P Costs & Capitalized Special Tooling ("Notice of Intent to Disallow Costs"),[3] indicating that the Government intended to disallow Plaintiff's allocation of the $8,149,888.00 in R & D and Production Equipment costs as indirect costs, because "these costs should be charged direct to the Castor IVA–XL program." *Id.* at 622–23; *see also* Pl. Mot. to Confirm at Ex. 4 ("Notice of Intent to Disallow"). Therein, the DACO identified four " 'test' contracts" for potential resolution by litigation. *Id.* ("The significant contracts that will receive an allocation of costs, which therefore

---

1. Relevant facts recited herein were discussed in *ATK Thiokol, Inc. v. United States,* 68 Fed.Cl. 612 (2005) and also derived from: the parties' May 18, 2006 Joint Status Report ("JSR"); and Plaintiff's Motion for Confirmation of Memorandum Opinion and Order ("Pl. Mot. to Confirm").

2. The DACO is part of the Defense Contract Management Command, an entity within the Defense Logistics Agency of the Department of Defense. *See* Compl. at 1.

3. Plaintiff mistakenly classified the Development Effort as indirect B & P costs. *See* Con. St. of Facts ¶ 93. Both parties agree, however, that under Plaintiff's interpretation of the applicable regulations the Development Effort should have been classified as R & D. *Id.*

govern the dispute, are NAS8–38100, PB10E9900N, F42610–94–C0031, and DAA001–95–C0016.").

On May 10, 1999, Plaintiff provided the DACO with a Certified Claim asserting that "the [G]overnment's Notice of Intent to Disallow Costs is totally improper" and requesting that the disputed R & D and Production Equipment costs be allowed as indirect costs:

> The undersigned, on behalf of Thiokol Propulsion ("Thiokol"), submits, at your request, a *certified claim* and request for a contracting officer's Final Decision pursuant to the Contract Disputes Act ("CDA") on the [G]overnment's claim dated March 10, 1999, whereby the [G]overnment issued a Notice of Intent to Disallow indirect costs in the amount of *$8,149,888*. That amount reflects $3,149,888 of disallowed [Research and Development ("R & D")] costs and $5 million of tooling and equipment costs.

Pl. Mot. to Confirm at Ex. 5 (emphasis added); *see also ATK Thiokol, Inc.*, 68 Fed.Cl. at 623. In addition to claiming that the intended disallowance of $8,149,888.00 was improper, Plaintiff's Certified Claim selected one of the four " 'test' contracts" proposed by the DACO as "the 'test' contract" and claimed $730,615.00 in R & D and Production Equipment costs thereunder:

> The Notice of Intent identified four "test" contracts: Contract Nos. NAS8–38100, PB10E9900N, F42610–94–C0031, and DAA001–95–C0016. The Notice was issued after detailed discussions between the parties and the existence of a clear disagreement. *For purposes of this request for a final decision, Thiokol identifies Contract No. NAS8–38100 as the "test" contract, and claims entitlement to recover $730,615 of the costs in dispute under that contract.*

*Id.* (emphasis added).

Plaintiff specified, however, that the identification of Contract No. NAS8–38100 as "the 'test' contract" was not a limitation as to the scope of the May 10, 1999 Certified Claim:

> Thiokol's right of recovery exists not only under the test NASA contract and the other three contracts upon which the [G]overnment's Notice of Intent to Disal-

low is based, but all contracts performed or priced during Thiokol's fiscal years 1998, 1998T and 1999 and thereafter[.]

*Id.*

On May 14, 1999, the DACO issued the Contracting Officer's Final Decision to Disallow Costs Castor IVA–XL [R & D] Costs & Capitalized Special Tooling ("Final Decision") regarding Plaintiff's indirect allocation of $8,149,888.00 in R & D and Production Equipment Costs:

> I am issuing this Final Decision to Disallow Costs booked as [Research & Development] costs that have been incurred or are to be incurred in connection with the Castor IVA–XL Research and Development/Production program. *The questioned amounts of [R & D] incurred are FY 98 $1,017,264, and FY98T, $1,132,624. The [R & D] estimated amount for CY99 is $1,000, 000.* It is my opinion that these costs should be charged direct to the Castor IVA–XL program. It is my position that the related *Special Tooling amount, $5,000,000,* should be charged direct to its original cost objective, the Castor IVA–XL contract. Thiokol Propulsion plans on capitalizing and depreciating these costs starting CY99.

*Id.* at Ex. 6 (emphasis added).

Moreover, the Final Decision adopted Plaintiff's selection of Contract No. NAS8–38100 as "the 'test' contract":

> Thiokol has identified Contract NAS8–38100 as the "test" contract and claims entitlement to recover $730,615[.00] of the costs in dispute under that contract. I agree with the designated contract and the stated amount as the amount in dispute allocable to that contract. I also agree that the contract will serve as the representative contract.

*Id.*

Nevertheless, the Final Decision disallowed not only $730,615.00 allocable to "the 'test' contract," but also the remainder of Plaintiff's indirect allocation of $8,149,888.00 in R & D and Production Equipment costs:

> The significant contracts that will receive allocation of costs, *which therefore govern*

the dispute, are NAS8–38100, PB10E9900N, F42610–94–C0031, and DAA001–95–C0016.

\* \* \*

It is my position that Thiokol should charge the [R & D] costs for FY98, FY98T, and CY99 incurred in connection with the Castor IVA–XL program direct to the program. These costs total approximately $3,500,000[.00]. It is my position that Thiokol should charge the [Production Equipment] costs that are being capitalized and depreciated starting CY99 direct to the Castor IVA–XL program. These costs total approximately $5,000,000[.00].

*Id.* at 4–5 (emphasis added).

On July 2, 1999, Plaintiff filed a three-count Complaint in the United States Court of Federal Claims. The Complaint only sought relief for that portion of the $8,149,888.00 disallowance attributable to "the 'test' contract", *i.e.,* Contract No. NAS8–38100:

4. On March 10, 1999, the DCMC Divisional Administrative Contracting Officer ("DACO") issued a government claim in the total amount of $8,149,888[.00] set forth in a Notice of Intent to Disallow Costs for the years 1998 and 1999 under Contract Nos. NAS8–38100, PB 10E9900N, F42610–94–C–0031, and DAA001–95–C0016.

5. *The parties agreed that Contract No. NAS8–38100 would be the "test" contract in this dispute.*

6. On May 10, 1999, pursuant to the DACO's request, Thiokol submitted a certified claim and request for a contracting officer's final decision, *claiming entitlement to recover $730,615[.00] of the costs in dispute under that "test" contract.*

\* \* \*

65. The contracting officer's final decision that the Development Effort costs are direct costs of the MHI contract and not allocable to and recoverable under *Contract No. NAS8–38100* is improper under the FAR and CAS.

66. Thiokol is *entitled to account for the Development Effort costs as indirect costs pursuant to CAS and FAR under the test contract, Contract No. NAS8–38100;* the total amount under *all contracts* is $3,149,-888[.00].

\* \* \*

77. Thiokol is *entitled to account for the manufacturing equipment as indirect costs pursuant to CAS and FAR under the "test" contract, Contract No. NAS8–38100;* the total amount under *all contracts* is $5,000,000[.00].

\* \* \*

91. The government is now estopped from disallowing those costs as indirect costs, *entitling Thiokol to recover indirect costs of $730,615 under the "test" contract, Contract No. NAS8–3810;* $8,149,888[.00] under *all contracts.*

### PRAYER FOR RELIEF

WHEREFORE, Thiokol respectfully requests the Court for the following relief:

A. That this Court enter judgment under Count I that the contracting officer's decision that Thiokol must account for the Development Effort costs as direct costs . . . is improper and that Thiokol may, pursuant to the FAR and CAS, account for the costs as indirect costs and recover those costs *under "test" Contract No. NAS8–38100;* and

B. That this Court enter judgment under Count II that the contracting officer's decision that Thiokol must account for the depreciation costs of the equipment as direct costs . . . is improper and that Thiokol may, pursuant to the FAR and CAS, account for the depreciation costs as indirect costs and recover those costs *under "test" Contract No. NAS8–38100;* or

C. In the Alternative to Counts I and II, that the Court enter judgment under Count III that the [G]overnment is estopped from requiring Thiokol to account for its Development Effort and equipment costs as direct costs . . . and must permit Thiokol to account for those costs as indi-

rect costs and to recover *$730,615[.00]* un-der *"test" Contract No. NAS8–38100;* and

D. That this Court award to Thiokol such other relief as the Court deems proper.

Compl. ¶¶ 4, 5, 65, 66, 76, 77, 91, Prayer (emphasis added).

On October 15, 1999, the Government filed an Answer, but denied that the parties agreed that Contract No. NAS8–38100 would be "the 'test' contract" in this dispute. *See* Gov't Answer ¶ 5 ("Denies the allegation contained in paragraph 5.")

On September 3, 2003, the Government filed a Motion For Summary Judgment Or, In The Alternative, For Summary Judgment Upon Counts I And II And To Dismiss Count III. On January 5, 2004, Plaintiff filed a Cross–Motion For Partial Summary Judgment And Opposition To Defendant's Motion For Partial Summary Judgment. On February 4, 2004, the Government filed a Reply thereto and an Opposition to Plaintiff's Cross–Motion For Partial Summary Judgment. On March 22, 2004, Plaintiff filed a Reply In Support Of Its Cross–Motion For Partial Summary Judgment. On October 19, 2004, the court held an oral argument on the parties' cross-motions.

On November 30, 2005, the court issued a Memorandum Opinion and Order granting Plaintiff's Cross–Motion for Summary Judgment on Counts I and II. *See ATK Thiokol, Inc.,* 68 Fed.Cl. at 645 (holding that the Contracting Officer's disallowance of $8,149,888.00 was improper, because that amount was allowable under the FAR as IR & D and Production Equipment costs).

On December 15, 2005, the court convened a teleconference with the parties to discuss the November 30, 2005 Memorandum Opinion and Order and ordered the parties to consult in an effort to measure the amount that the Government's owed Plaintiff, including appropriate interest under the Contract Disputes Act, 41 U.S.C. § 611.

On May 19, 2006, the parties filed a Joint Status Report advising the court that they had reached an agreement on the methodology for determining the quantum of damages, but identified an unresolved legal issue:

The parties essentially agree on how to measure the quantum. A legal issue has been identified, however, upon which the parties are unable to agree. Specifically, the government asserts that measurement of quantum should include consideration of only Contract No. NAS8–38100[,] because it is only this "test contract" upon which the Court maintains jurisdiction under the Contract Disputes Act, 41 U.S.C. § 601, *et seq.* ATK believes the quantum should include consideration of all flexibly priced government contracts, including the "test contract," all of which were subject to the government contracting officer's notice of intent to disallow, ATK's certified claim and the contracting officer's final decision.

JSR at 1. Therein, the parties also proposed that Plaintiff file a brief and enclose relevant Government correspondence, in lieu of a Government response. *Id. at 2.* On June 1, 2006, the court issued an order to that effect. *See* Ct. Order (Jun. 1, 2006) (Dkt. No. 133). On June 5, 2006, Plaintiff filed a Motion for Confirmation of Memorandum Opinion and Order.

## II. DISCUSSION

### A. Jurisdiction.

There is no dispute that the parties have entered into a number of contracts. *See ATK Thiokol, Inc.,* 68 Fed.Cl. at 626 (citing Cons.St. of Facts ¶ 111 (Stip.)). There also is no dispute that Plaintiff's May 10, 1999 Certified Claim was presented to the Contracting Officer and that a Final Decision was rendered four days later on May 14, 1999. *Id.* The parties, however, now dispute the scope of Plaintiff's May 10, 1999 Certified Claim, and, therefore, the scope of the court's jurisdiction. *See* JSR at 1.

### B. Standard for Decision.

Plaintiff has the burden to establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question it [is] incumbent upon [Plaintiff] to come forward with

evidence establishing the court's jurisdiction.").

## C. The Parties' Arguments.

### 1. The Government's Argument.

The Government argues that the court's jurisdiction is limited to that portion of the $8,149,888.00 disallowance attributable to Contract No. NAS8.–381000:

There is only one contract, No. NAS8–38100, for which Thiokol has certified, in compliance with the Contract Disputes Act, that "the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable[.]" The parties' use of the terms "test contract" and "representative contract" in correspondence does not change that fact. Nor can the parties establish jurisdiction by agreement where it does not exist. You cite no case, and we know of none, in which the contractor's certification under one contract has been found to establish CDA jurisdiction under another contract.

\* \* \*

The Government's position here has nothing to do with the number of claims that Thiokol should certify and file, or with the efficiency of this litigation.

Pl. Mot. to Confirm at Ex. 3 (May 8, 2006 Letter from the Government to Plaintiff regarding quantum of damages); *see also* Pl. Mot. to Confirm at Ex. 1 (April 19, 2006 Letter from the Government to Plaintiff regarding quantum of damages) ("[T]he difference between the Government's figure and the number previously proposed by Thiokol is entirely explained by the fact that our calculation is based on Contract No. NAS8–38100. That contract, as Thiokol alleged in paragraphs 5–7 of the [C]omplaint, is the only contract that is the subject of Thiokol's certified claim dated May 10, 1999 and the contracting officer's final decision dated May 14, 1999.").

The Answer denies that the parties agreed that Contract No. NAS8–38100 was "the 'test' contract." *See* Answer ¶ 5. Nevertheless, the Government argues that:

[T]his is a 'test case' . . . once judgment becomes final and unappealable, the outcome will affect Thiokol's recovery of costs under several Government contracts.

Pl. Mot. to Confirm at Ex. 1 (April 19, 2006 Letter from Government to Plaintiff).

### 2. Plaintiff's Response.

Plaintiff responds that: the parties' " 'test' contract" understanding, the scope of the Contracting Officer's Final Decision, and the "practical consequences" of limiting relief to Contract No. NAS8–38100, support Plaintiff's argument that the court's jurisdiction is not limited only to that portion of the $8,149,888.00 attributable to Contract No. NAS8–38100:

ATK would ask that the Government reconsider its position on the proper calculation of damages, and specifically the inclusion of costs at issue allocable to flexibly priced contracts other than Contract No. NAS8–38100. ATK's request is premised on both the clear understanding of the parties to the dispute and the law applicable to the use of representative contracts to resolve issues involving indirect costs.

With respect to the parties' understanding, in the May 14, 1999 final decision letter, the Divisional Administrative Contracting Officer . . ., explained the contractual basis for his decision in these terms:

Thiokol had identified Contract NAS8–38100 as the "test" contract and claims entitlement to recover $730,615[.00] of the costs in dispute under that contract. *I agree that the contract will serve as the representative contract.* Since a mutually agreeable position cannot be reached, this letter constitutes a Final Decision to Disallow Costs by the Contracting Officer.

In reliance on the DACO's May 14, 1999 final decision, and his confirmation that the dispute involving all of the affected contracts would proceed using Contract No. NAS8–38100 as the representative contract, Thiokol filed its complaint in the above referenced action using the representative contract to appeal the DACO's final decision. Thiokol's complaint was clear that the action being filed was prem-

ised on the DACO's use of the representative or "test" contract to resolve the issue as to all affected contracts.

The understanding of the DACO and Thiokol that the dispute defined by the final decision covered all affected contracts, and would be processed using Contract NAS8–38100 as the "representative contract," is significant because that understanding underpins the jurisdiction of the Court to ultimately rule on the full quantum covered by the Court's November 30, 2005 decision.

\* \* \*

To the extent that the contracting officer has structured his or her final decision using a test contract, with the expressed intention that the final decision will control the issue as to other contracts, the Court's jurisdiction is coextensive with the scope of that final decision.... The terms and scope of the contracting officer's final decision sets the scope of the resulting jurisdiction for the Court.... The DACO rendered his final decision based upon a representative contract with his expressed intent to cover all of Thiokol's flexibly priced contracts subject to allocation with the disputed costs. If the DACO had intended to limit the scope of his final decision and the scope of the parties' dispute before the Court or a Board of Contract Appeals solely to the representative contract, then the denial of costs in his final decision would have been limited to the costs allocable to the representative contract. Instead, his final decision dealt with the entirety of the costs impact on all affected contracts and it was that decision which was the basis for the Court's decision here. The DACO's final decision cannot be read to permit any other result. It is also helpful to consider the consequences of the Government's proposed limiting of the Court's decision to the single representative contract used by the parities for processing this dispute. First, the Government's position would force needless and wasteful litigation on not only the contractor, ATK, and the Government, but on the Court as well. The Government's position seeks to do nothing more than postpone the inevitable at the cost of wasted resources for everyone involved.

Second, the Government's position is essentially that ATK would now need to file all new claims on each and every contract to which the IR & D and B & P costs covered by the Court's decision are allocable during the relevant periods.

Pl. Mot. to Confirm at Ex. 2 (May 5, 2006 Letter from Plaintiff to the Government).

### D. The Court's Resolution Of Plaintiff's June 5, 2006 Motion To Confirm.

■ The court's jurisdiction to award monetary damages under the CDA is predicated on the contractor's satisfaction of two prerequisites: the submission of a written claim to the relevant contracting officer; and the issuance of a final decision by the Contracting Officer. *See England v. The Swanson Group, Inc.,* 353 F.3d 1375, 1379 (Fed. Cir.2004) ("We have held, based on the statutory provisions, that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.") (citing *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996) ("Thus, for the [United States Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.")).

The court's November 30, 2005 Memorandum Opinion and Order held that both of these prerequisites were satisfied. *See ATK Thiokol, Inc.,* 68 Fed.Cl. at 626 ("[T]he court has determined that it has jurisdiction to adjudicate Plaintiff's claims in this case.").[4]

---

**4.** This holding was based, in part, upon the following stipulations of the parties:

PLAINTIFF'S POSITION: On May 10, 1999, Thiokol submitted a certified claim and request for a contracting officer's final decision.

DEFENDANT'S POSITION: Stipulated
PLAINTIFF'S POSITION: ON May 14, 1999, the DACO issued a final decision denying Thiokol's claim.
DEFENDANT'S POSITION: Stipulated.

This determination, however, was limited to Contact No. NAS8–38100, because the Complaint sought relief only for that portion of the $8,149,000.00 disallowance attributable to Contract No. NAS8–38100:

> Count I alleged that because the Development Effort costs were not required in the performance of the Mitsubishi Contract and, therefore, Plaintiff is entitled to account for the Development Effort as indirect costs under Contract No. NAS8–38100 in the amount of $3,149,888[.00].[9]
>
> Count II alleges that the total amount that should have been allowed under all contracts was $5,000,000[.00], but again does not indicate what portion of that amount should have been allowed under the test contract.

> [9] Although Count I alleges that the total amount under all contracts that should have been allowed is $3,149,888[.00], it does not indicate what portion of that amount should have been allowed under Contract No. NAS8–38100.

*ATK Thiokol, Inc.,* 68 Fed.Cl. at 623; *see also* Compl. ¶¶ 66, 77, 91, Prayer.

Plaintiff, however, now seeks relief for the entire $8,149,888.00 disallowance, not just that portion of the disallowance attributable to Contract No. NAS8–38100. The court, therefore, considers Plaintiff's Motion to Confirm as a Motion for Leave to Amend the Complaint, pursuant to RCFC 15, because where, as here, a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*" RCFC 15(a) (emphasis added).

■ The United States Supreme Court, interpreting Federal Rule of Civil Procedure 15(a), on which RCFC 15(a) is modeled, has held that:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a[P]laintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as *undue delay,* bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice to the opposing party by virtue of allowance of the amendment,* futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (citation omitted) (emphasis added).

■ In this case, the court has determined that granting Plaintiff leave to amend the Complaint does not prejudice the Government, because: the Plaintiff has not made any prior requests to amend; the Government received timely notice through the Certified Claim that Plaintiff claimed entitlement to the entirety of the disallowance; the Complaint, although only seeking relief for that portion of the disallowance attributable to Contract No. NAS8–38100, alleges that the entire disallowance is improper; and the context in which "the 'test' contract" arose mitigates the minor delay entailed for Plaintiff to amend the Complaint. *See* Mot. to Confirm at Ex. 5 (Certified Claim); *see also* Compl. ¶¶ 65, 66, 76, 77.

■ Accordingly, in keeping with the text of RCFC 15(a) that "leave shall be freely given when justice so requires," the court grants Plaintiff leave to amend the Complaint to seek relief for the entirety of the $8,149,888.00 disallowance.[5] The court's decision to grant Plaintiff leave to amend the Complaint to seek relief for the entire $8,149,888.00 disallowance, however, raises the question of whether Plaintiff's May 10, 1999 Certified Claim was a "claim," within the meaning of 41 U.S.C. 605(a), for the entire $8,149,888.00 disallowance or only that

Con. St. of Facts ¶¶ 110–11 (Stip.)

**5.** The CDA requires that "[a]ny action … shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3). The Amended Complaint permitted by the court's grant of leave to amend, however, satisfies RCFC 15(c)(2)'s requirement for relation back to the date of the original Complaint, because it arises out of the same "conduct, transaction, or occurrence" set forth in the original Complaint. *See* RCFC 15(c)(2).

portion of the disallowance attributable to Contract No. NAS8–38100. *Compare* Mot. to Confirm at 14 (Plaintiff arguing that the Certified Claim extends to the entire $8,149,888.00 disallowance), *with* Mot. to Confirm at Ex. 3 (May 8, 2006 Letter from the Government to Plaintiff) (the Government arguing that Plaintiff's Certified Claim extends only to that portion of the intended disallowance attributable to Contract No. NAS8–3 8100).

Although the Contract Disputes Act, 41 U.S.C. §§ 601–13, does not define "claim," Federal Acquisition Regulation ("FAR") 31.205–11 defines "claim" as: "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. Moreover, FAR 31.205–11 sets forth three requirements when a contractor files "a non-routine 'claim' for money: that it be (1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995). No particular language is required to assert a claim thereunder. *See Contract Cleaning Maint., Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir. 1987) ("We know of no requirement in the Disputes Act that a 'claim' must be submitted in any particular form or use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."); *see also Davies Precision Machining, Inc. v. United States,* 35 Fed.Cl. 651, 663 (1996) ("A claim need not be in any stringent form or contain any predetermined wording."). For this reason, the scope and validity of a claim does not turn on the contents of a contracting officer's final decision. *See W.M. Schlosser Co., Inc. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir.1983) ("[T]he fact that a contracting officer has rendered a decision on the merits of an uncertified claim was of no consequence, since the officer 'had no authority to waive a requirement that

Congress had imposed.' ") (quotations omitted).

In this case, on May 14, 1999, Plaintiff satisfied FAR 31.205–11's first requirement by submitting a Certified Claim in writing. In doing so, Plaintiff also satisfied the requirement that such a claim be filed within six years of the accrual of the claim. *See* 41 U.S.C. § 605(a) ("Each claim by a contractor against the government relating to a contract ... shall be submitted within 6 years after the accrual of the claim.").

Plaintiff's Certified Claim also satisfied FAR 31.205–1's second requirement of seeking money, *i.e.,* $8,149.888.00 in R & D and Production Equipment Costs, "as a matter of right." *See* Mot. to Confirm at Ex. 5 ("[Plaintiff] believes that pursuant to FAR § 31.205–11 and § 31.205–18, incorporated into the referenced contracts through FAR clauses 52.216–7, 52.216–10, 52.216–16, 52.230–2 and 52.230–6, Thiokol is entitled to recover the questioned cost as allowable indirect costs."); *see also* 48 C.F.R. § 2.101.

In addition, Plaintiff's Certified Claim satisfied FAR 31.205–11's third requirement by seeking the payment of a sum certain:

The undersigned, on behalf of Thiokol Propulsion ("Thiokol"), submits, at your request, a certified claim and request for a contracting officer's Final Decision pursuant to the Contract Disputes Act ("CDA") on the government's claim dated March 10, 1999, whereby the [G]overnment issued a Notice of Intent to Disallow indirect costs in the amount of *$8,149,888[.00].* That amount reflects *$3,149,888[.00] of disallowed [Research and Development ("R & D")] costs and $5 million of tooling and equipment costs.*

\* \* \*

*The government's disallowance is improper in its entirety ...* this request provides a brief explanation as to why the costs questioned by the [G]overnment are allowable under applicable rules, regulations, and case law.

\* \* \*                       \* \* \*

For the reasons discussed above, the government's Notice of Intent to Disallow Costs is *totally improper.*

Mot. to Confirm at Ex. 5 (emphasis added).

Accordingly, Plaintiff's May 10, 1999 Certified Claim complies with 41 U.S.C. § 605(a), as defined by FAR 31.205–11, as to the entire $8,149,888.00 disallowance.

The Government argues that Plaintiff's Certified Claim is limited only to that portion of the $8,149,888.00 disallowance attributable to Contract No. NAS8–38100, because "it is the only contract that is the subject of [Plaintiff]'s certified claim dated May 10, 1999 and the contracting officer's final decision dated May 14, 1999."

As the record evidences, the CO's Final Decision disallowed $8,149,888.00 of Plaintiff's indirect allocation of R & D and Production Equipment costs:

> I am issuing this *Final Decision to Disallow Costs* booked as [R & D] costs that have been incurred or are to be incurred in connection with the Castor IVA–XL Research and Development/Production program. The questioned amounts of [R & D] incurred are FY98, *$1,017,264[.00]* and FY98T, *$1,132,624[.00].* The [R & D] estimated amount for CY99 is *$1,000,000[.00].* *It is my opinion that these costs should be charged direct to the Castor IVA–XL program.* It is my position that he related Special Tooling amount, *$5, 000,000[.00],* *should be charged direct* to its original cost objective, the Castor IVA–XL contract.

Mot. to Confirm at Ex. 6 (emphasis added).

The Contracting Officer, however, after suggesting the use of a representative " 'test' contract" and approving "the 'test' contract" selected by Plaintiff, reiterated that the dispute was not limited to "the 'test' contract":

> Thiokol has identified Contract NAS8–38100 as the "test" contract and claims entitlement to recover $730,615[.00] of the costs in dispute under that contract. I agree with the designated contract and the stated amount as the amount in dispute allocable to that contract. I also agree that the contract will serve as the representative contract.

> The significant contracts that will receive allocation of costs, *which therefore govern the dispute,* are NAS8–38100, PB10E9900N, F42610–94–C0031, and DAA001–95–C0016.

Mot. to Confirm at Ex. 6 (Final Decision) (emphasis added).

The Government has apparently "forgotten" the genesis of "the 'test' case" procedure:

> The Notice of Intent identified four "test" contract: NAS8–38100, PB10E9900N, F42610–94–C0031, and DAA001–95–C0016. The Notice was issued after detailed discussions between the parties and the existence of a clear disagreement. For the purposes of this request for a final decision, Thiokol identifies Contract No. NAS8–38100 as the "test" contract, and claims entitlement to recover *$730,615[.00] of the costs in dispute under that contract.*

Mot. to Confirm at Ex. 5 (Certified Claim) (emphasis added).

The court, however, has determined that, in context, Plaintiff's identification of Contract No. NAS8–381000 as "the 'test' contract" was not a limit the scope of the Certified Claim, which satisfied the jurisdictional "claim" prerequisite of 41 U.S.C. § 605(a) as to the entirety of the DACO's disallowance, *i.e.,* $8,149,888.00.

## CONCLUSION

On or before September 15, 2006, Plaintiff may file an Amended Complaint seeking any additional relief related to the Contracting Officer's May 14, 1999 Final Decision to Disallow Costs Castor IVA–XL [R & D] Costs & Capitalized Special Tooling Final Decision.

In addition, on or before September 15, 2006, the parties will file a stipulation regarding the amount the Government owes Plaintiff under the court's November 30, 2005 Memorandum Opinion and Order. Alternatively, on or before September 15, 2006, the parties will file Joint Status Report contain-

ing a proposed schedule for briefing and conducting a hearing on damages.

**IT IS SO ORDERED.**